United States District Court
Middle District of Florida
Jacksonville Division

CHRISTINE A. CLARK,

      *Plaintiff,*

v.                                         NO. 3:14-cv-1037-J-34PDB

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

      *Defendant.*

---

## Report and Recommendation

Through contract and tort claims under state law, Christine Clark seeks disability benefits and mental-distress damages from Unum Life Insurance Company of America. Doc. 2. Before the Court is Unum's motion to dismiss her tort claim, Doc. 3 (motion), Doc. 21 (response), and her motion to remand the case to state court on the grounds that Unum's only basis for removal—federal-question jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461—is absent and Unum filed its removal notice too late. Doc. 8 (motion), Doc. 11 (response), Doc. 19 (reply). I heard arguments on the motions, Doc. 30, and the parties supplemented their arguments afterward, Docs. 24, 25, 26, 27, 28, 29. Concluding that ERISA completely preempts at least one contract claim and Unum timely filed its notice of removal, I recommend denying her motion to remand. Because she has stated a desire to amend the complaint if the case stays here, Doc. 30 at 55, I

recommend giving her leave to do so and denying without prejudice the motion to dismiss the tort claim.

## I.   Background

### A.   *Pleadings*

Clark filed the complaint in state court on September 9, 2013. Docs. 1-1, 2. She alleges the following facts. She is a Florida citizen,[1] and Unum is a Tennessee corporation with its principal place of business in Maine.[2] Doc. 2 ¶¶ 1−3, 6. She used to be a trial lawyer specializing in "civil trial, personal injury, and wrongful death." Doc. 2 ¶¶ 7, 8. In that position, she bought from Unum two "personal" disability policies, the first in 1992 and the second in 1994.[3] Doc. 2 ¶¶ 4, 5, 7, 8. More than a decade later, because of spine problems and depression, she could no longer work in that position. Doc. 2 ¶ 9. Unum recommended she was "totally disabled" and paid her benefits beginning in December 2007 (pending validation) but ceased in October 2010, finding she was no longer disabled. Doc. 2 ¶¶ 13, 14.

Clark identifies the policies by designation numbers, purchase dates, and subject but does not attach them to the complaint. Doc. 2 ¶¶ 4, 5. Instead, for each, she alleges: "In lieu of attaching a copy of the referenced policy to this Complaint,

---

[1]Clark alleges she was a Florida "citizen and resident" at "all relevant times" and she "continues to suffer damages." Doc. 1 ¶¶ 6, 25, 29. Together, those allegations suffice to provide she was a Florida citizen when she filed the complaint.

[2]Unum clarifies in its answer that it is a Maine corporation. Doc. 4 ¶ 3.

[3]At the hearing, Clark's counsel explained that the policies are identical except for their payment schedules and riders. Doc. 30 at 44−45.

Plaintiff would show that Unum is the originator and creator of said contract/policy of insurance and the original is already in its possession." Doc. 2 ¶¶ 4, 5.

Clark asserts three claims under Florida law: (1) breach of the first disability policy by failing to timely pay benefits, Doc. 2 ¶¶ 22–25; (2) breach of the second disability policy by failing to timely pay benefits, Doc. 2 ¶¶ 26–29; and (3) negligent or intentional breach of statutory duties in Fla. Stat. § 626.9541 (defining unfair methods of competition and unfair or deceptive acts or practices by insurers) and other unspecified statutes by failing to timely pay benefits, investigate the claims, and communicate about the claims. Doc. 2 ¶¶ 18, 30–33.

Clark does not specify an amount in controversy. *See generally* Doc. 2. She alleges, "[t]his is an action for damages in excess of $15,000." Doc. 2 ¶ 1; *see* Fla. Stat. § 26.012(2)(a) (providing jurisdiction of circuit courts over all cases not cognizable by county courts); Fla. Stat. § 34.01(1)(c) (providing jurisdiction of county courts over cases in which amount in controversy does not exceed $15,000). For the contract claims, she alleges that she "has suffered and continues to suffer damages." Doc. 2 ¶¶ 25, 29. For all of the claims, she demands unpaid benefits, interest, costs, and attorney's fees. Doc. 2 ¶¶ 25, 29, 33. For the tort claim, she also seeks damages for mental anguish caused by having to undergo lifestyle changes. Doc. 2 ¶ 33.

In state court, Unum answered the contract claims, Doc. 4, moved to dismiss the tort claim on the ground it cannot proceed before any breach determination, Doc. 3, and proceeded with discovery, Doc. 1-1. As an affirmative defense in an amended pleading filed in November 2013, it states: "Plaintiff's purported causes of action …,

3

if any, arise under [ERISA]. To the extent Plaintiff's Complaint seeks remedies not provided for by ERISA, they are preempted by ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)."[4] Doc. 4 at 3.

## B.    *Notice of Removal*

Unum filed its notice of removal on August 28, 2014, almost a year after service of the complaint. Doc. 1; Doc. 1-1 at 1–2 (state docket sheet indicating summons served September 19, 2013). It contends that the Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because ERISA completely preempts the claims. Doc. 1 at 1–6. It contends that its notice of removal is timely under 28 U.S.C. § 1446(b)(3) because it only first learned the facts for complete preemption at Clark's July 30, 2014, deposition. Doc. 1 at 6–7.

Unum attaches part of the deposition transcript. Doc. 1-1 at 10–26. Clark testified as follows. In 1992, after attending law school and serving as a law clerk, she worked as an associate for Booth & Arnold, P.A. Doc. 1-1 at 11. Among other benefits in a package, the Booth firm (through partner Ed Booth) decided to provide her a disability policy, arranged to obtain one for her, presented it to her, and provided it for her. Doc. 1-1 at 11. The Booth firm used a broker and paid the premiums out of its own funds. Doc. 1-1 at 14–15. She explained: "[I]t was just presented, this is what we're getting you." Doc. 1-1 at 16. Two years later, in 1994, she started working for The Law Firm of Pajcic & Pajcic. Doc. 1-1 at 15–16. The Pajcic

---

[4]In the case Unum cites, the Supreme Court held that ERISA completely preempts a state claim for improper processing of an insurance claim under an employee benefit plan. *Pilot*, 481 U.S. at 46–48.

4

firm allowed her to "bring" the policy with her and agreed to process and pay the premiums to Unum out of its own funds. Doc. 1-1 at 16−20, 24. She thinks she bought the second policy at that time because she was going to be making more money. Doc. 1-1 at 25−26.

## C.    *Motion to Remand*

Clark filed her motion to remand within 30 days of the notice of removal (not counting the last day—a Sunday). Doc. 1 (notice of removal filed August 28, 2014); Doc. 8 (motion to remand filed September 29, 2014). Besides remand, she asks for attorney's fees and costs caused by removal. Doc. 8 at 12−13. She includes the policies, Docs. 8-2, 8-3; nearly 2500 pages of claim files, Doc. 15; checks from the Pajcic firm to Unum, Doc. 8-7; an affidavit of the agent who sold the policies, Doc. 8-8; an affidavit of the accountant and bookkeeper for the Pajcic firm, Doc. 8-9; and a letter from the trustee of the Pajcic & Pajcic Group Benefit Plan, Doc. 8-10. Several documents in the claim files describe the policies as "individual" ones. *See generally* Doc. 15. Without consideration of cost-of-living increases or riders, the polices appear to provide maximum monthly benefits of $1520 (first policy) and $4301 (second policy) to the later of age 65 or 24 months after payments begin. Docs. 25-2, 25-3.

For her argument that Unum filed its notice of removal too late, Clark observes that Unum raised ERISA preemption as an affirmative defense months earlier and points to documents in Unum's claim files showing facts upon which it assertedly could have raised ERISA complete preemption at the outset (the policies, the policy summaries, the policy descriptions, and checks from the Pajcic firm to Unum). Doc. 8

at 2–3, 5–7. She alternatively argues that removal on the basis of federal-question jurisdiction is inappropriate because ERISA does not govern the policies. Doc. 8 at 3–4, 7–12. The affidavits and letter together explain that the policies were sold as individual policies, she maintained ownership and control over them, "the firm" (the affidavit with this—the agent's—does not state which firm) could not change them, the Pajcic firm did not treat them as or consider them part of the Pajcic & Pajcic Group Benefit Plan, and the Pajcic firm paid the premiums as part of her "specially negotiated compensation package" until one to three years before she stopped working, and, afterward, as a convenience to her, continued to send the premiums to Unum with reimbursement from her. Docs. 8-8, 8-9, 8-10.

## D.   *Hearing Representations*

At the hearing on the motions, I asked the parties to discuss diversity jurisdiction because neither the notice of removal nor the motion for remand discussed that basis for subject-matter jurisdiction and whether it affected the time to file the notice of removal. Doc. 30 at 6–7; *see generally* Docs. 1, 8. The parties agree that diversity jurisdiction exists; Unum contests neither the complaint's allegation that Clark is a Florida citizen, Doc. 2 ¶ 6; Doc. 30 at 47, nor her counsel's representation that the amount in controversy exceeds $75,000, Doc. 30 at 5.

Clark's counsel explained that, until earlier that day, he had "flatly missed" an untimeliness argument based on diversity jurisdiction but asked the Court to excuse his neglect and consider one. Doc. 30 at 23–24. Unum's counsel did not oppose consideration of the argument and conceded that diversity jurisdiction had been

apparent at the outset but emphasized that it had not been facially apparent from the complaint because it lacked an allegation concerning the $75,000 threshold. Doc. 30 at 6–8, 9–10, 47–49. She explained that, because the main dispute is whether Clark "was disabled from her position as a trial attorney," Unum had felt comfortable in state court with state claims, but after discovery suggested that ERISA might govern the policies, it had taken Clark's deposition to glean facts to determine if it did. Doc. 30 at 7–8. When her testimony suggested it did, it no longer felt comfortable in state court with federal claims. Doc. 30 at 8, 11–12. Clark's counsel conceded, and the state docket sheet confirms, the state court had made no adverse decision that could have prompted removal. Doc. 30 at 22–23; *see generally* Doc. 1-1 at 1–3. Neither party contests the facts in Clark's deposition, Doc. 1-1 at 10–26, the affidavits, Doc. 8-8, Doc. 8-9, or the letter,[5] Doc. 8-10. Doc. 30 at 19–20, 45–47, though neither party knows exactly when she started reimbursing the Pajcic firm for the premiums (she contends between one to three years before she stopped working, Doc. 30 at 44; Unum contends it was when she stopped working, Doc. 30 at 18).

**E.    *Supplemental Arguments***

In Clark's supplemental brief, she argues that the complaint incorporated the policies, and the complaint and policies together "clearly" show that the amount in controversy exceeds $75,000, so Unum should have removed the case based on

---

[5]Unum's counsel contested the "evidentiary capacity" of the letter because it is unsworn but did not dispute its facts, which do not add material facts not already in the affidavits. *Compare* Doc. 8-8 (affidavit) *and* Doc. 8-9 (affidavit) *with* Doc. 8-10 (letter). In any event, a court may use unsworn letters to decide the propriety of removal. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

diversity jurisdiction within 30 days of its receipt of the complaint. Doc. 24 at 1–2. Without explaining her calculation but calling it "[s]imple math," she says she is seeking $450,000 to $500,000 in past damages plus unspecified future damages for at least the next decade.[6] Doc. 24 at 3; Doc. 28 at 3.

Clark also observes that she had referred Unum to the claim files in March 2014 discovery responses and argues that the reference obligated Unum to review the files to determine if ERISA governed the policies so, at the latest, Unum should have removed the case based on federal-question jurisdiction within 30 days of its receipt of the responses. Doc. 24 at 1–2. She points to her general reference to her claim files in response to requests for production of the documents relating to the claims, including documents from Unum, documents relating to the policies, documents relating to any other policy under which she is covered, documents relating to any claim made or benefits received, documents relating to why she left the Pajcic firm, and medical records relating to her disability. Doc. 25-1. She adds that regardless of timeliness, the basis for removal is absent because even if ERISA initially governed the policies, its governance ceased at some unspecified point. Doc. 24 at 2, 4–5.

In Unum's supplemental briefing, it argues that Clark had not incorporated the policies into her complaint and that, without such incorporation, the amount in controversy is not apparent from the face of the complaint such that it did not trigger the 30-day removal period. Doc. 26 at 1–3; Doc. 29 at 1–2. It urges the Court to adopt

---

[6]It is unclear how Clark arrives at her calculation of $450,000 to $500,000 in damages during the 35 months between the October 2010 cessation of benefits and the September 2013 filing of the complaint.

the holding of *S. Broward Hosp. Dist. v. Coventry Health & Life  Ins. Co.*, No. 14-61157, 2014 WL 6387264, at *2 (S.D. Fla. Nov. 14, 2014) (unpublished), and many courts of appeals that pre-suit information possessed by a defendant does not trigger the removal period. Doc. 26 at 3–4. It also observes that she never provided it with the amount in controversy during discovery, instead responding to an April 2014 interrogatory: "The amount of damages being claimed … have [sic] not been determined at this time. Damages calculations will be made by Plaintiff's expert economist in preparation for the trial of this matter. Also see Plaintiff's Complaint. Discovery is continuing and ongoing." Doc. 26 at 3. It adds that even if it had an obligation to comb her claim files to determine removability, they would not have provided information for removal based on complete ERISA preemption because they show only some checks from the firms to Unum. Doc. 26 at 3–4. Addressing her argument that even if ERISA initially governed the policies, its governance ceased at some point, Unum contends, "once ERISA, always ERISA." Doc. 29 at 4–5.

## II.   Law & Analysis

### A.   *Motion to Remand*

28 U.S.C. § 1441 permits a defendant to remove a case brought in state court to federal court if the federal court has federal-question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Federal-question jurisdiction requires a claim "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction requires diverse citizenship of the parties and

more than $75,000 in controversy, 28 U.S.C. § 1332(a), assessed at the time of removal, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009).

28 U.S.C. § 1446 governs removal procedure, which is not jurisdictional.[7] *Moore v. North Am. Sports, Inc.,* 623 F.3d 1325, 1329 (11th Cir. 2010). A defendant who wants to remove a case to federal court from state court must timely file in the federal court a notice of removal signed under Federal Rule of Civil Procedure 11 (setting forth requirements for filings and providing sanctions for violations) and "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). If challenged, a defendant must prove the jurisdictional basis for removal by a preponderance of the evidence. *Williams v. Best Buy Co.,* 269 F.3d 1316, 1319 (11th Cir. 2001). It may rely on a "wide range of evidence," including complaint allegations, other admissions by the plaintiff (including those made during a hearing in response to a question by the court), unsworn letters, and affidavits. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754–55, 768 (11th Cir. 2010). It also may draw upon "reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Id.* at 754.

28 U.S.C. § 1447 authorizes a plaintiff to seek remand of a removed case based on either a jurisdictional or procedural defect (for the latter, the plaintiff must move to remand within 30 days of the defendant's filing of the notice of removal) and

---

[7]The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112–63, 125 Stat. 758 (Dec. 7, 2011), amended section 1446 effective January 6, 2012, and is applicable to cases commenced after that date. *See* Pub. L. 112–63. Because Clark filed the complaint in 2013, the amended version applies. For the issues here, reliance on pre-amendment cases is warranted because the pertinent provisions have not materially changed.

permits a court to order payment of attorney's fees and costs incurred because of removal. A court generally may do so only if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).[8]

Congress created removal to protect defendants. *Pretka*, 608 F.3d at 766. While a court must construe the removal statutes narrowly and resolve any doubt against removal, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), it must be "equally vigilant" in protecting the right to proceed in federal court as it is in permitting a state court to retain its jurisdiction, *Pretka*, 608 F.3d at 766.

Even if a court has subject-matter jurisdiction over a removed case, remand is warranted if the defendant filed its notice of removal too late. 28 U.S.C. § 1447(c). Thus, remand is warranted here if either (1) the basis for removal—complete ERISA preemption—is absent or (2) Unum filed the notice of removal too late. Because facts pertinent to preemption govern removal timing, I address the issues in that order. Before doing so, I observe that Unum has never sought to amend the notice of removal to add diversity jurisdiction as a basis for removal and concedes that the Court's undeniable diversity jurisdiction does not relieve it of its burden of establishing federal-question jurisdiction through complete ERISA preemption because that is the

---

[8]A remand order is not ordinarily reviewable. 28 U.S.C. § 1447(d). An exception applies to class actions. 28 U.S.C. § 1453(c). As a result, appellate decisions on removal usually involve class actions. *See, e.g., Pretka*, 608 F.3d at 752. Sections 1446 and 1447 apply to removals of class actions and non-class actions alike (with an exception not applicable here). 28 U.S.C. § 1453(b) & (c). Accordingly, those cases apply equally to non-class actions like this case.

only basis upon which it removed the case, Doc. 1. Doc. 30 at 7. It was comfortable proceeding in state court when it seemed only state claims were involved, Doc. 30 at 8, 11−12, and presumably remains so if ERISA does not completely preempt them.

Accepting Unum's concession is warranted because it accords with the traditional understanding that a statutory grant of subject-matter jurisdiction alone does not ordinarily authorize a district court to decide a case; a party must also ordinarily invoke the applicable jurisdictional ground. *See Wood v. Crane*, 764 F.3d 316, 325−26 (4th Cir. 2014) ("Crane made a strategic decision not to assert removal as to [particular] claims. We usually hold parties to that sort of strategic decision, and are unable to discern why this situation would merit a departure from the general rule."); *Gavin v. AT&T Corp.*, 464 F.3d 634, 641 (7th Cir. 2006) ("We assume that the defendants would prefer to litigate the plaintiff's Illinois tort claim in federal court. But as they have never suggested diversity as a basis for jurisdiction, insisting instead on placing all their jurisdictional eggs in the [federal-question] basket, there we shall leave them.").[9] Thus, as Unum concedes, diversity jurisdiction does not relieve it of its burden of establishing federal-question jurisdiction.

---

[9]There is authority contrary to the traditional understanding, but Unum has not asked the Court to consider it, presumably in light of its willingness to stay in state court if only state claims proceed. *See Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976−77 (9th Cir. 2006) (reversing remand once plaintiff no longer brought federal claim because court also had diversity jurisdiction); *Buchner v. FDIC*, 981 F.2d 816, 818 (5th Cir. 1993) (holding court lacked discretion to remand because it had subject-matter jurisdiction and there was no procedural defect). In any event, because those cases are contrary to the traditional understanding, they are not persuasive. *See* Jeannette Cox, *Removed Cases and Uninvoked Jurisdictional Grounds*, 86 N.C. L. Rev. 937, 953−57 (2008) (observing that those cases "failed to adequately explain their departure from the traditional approach to uninvoked

1.      *The basis for removal—complete ERISA preemption—is present.*

"It is long settled" that, for removal, a claim arises under federal law only if the complaint raises a federal claim. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). A "corollary … is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64.

ERISA creates a comprehensive regulatory scheme for employee welfare benefit plans and provides the exclusive means by which a participant may bring a civil action to recover benefits, enforce rights, or clarify rights. *Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1295 (11th Cir. 2001). ERISA serves two objectives: protection of employees' interests and administrative ease for employers. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 142, 138 (1990). ERISA preemption of state claims serves both by ensuring uniformity in standards and requirements. *Id.*

ERISA completely preempts a state claim and converts it to a claim arising under federal law if the plaintiff could have raised it under section 502(a)(1)(B) of ERISA and there is no independent legal duty implicated by the defendant's actions. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209–10 (2004). Section 502(a)(1)(B) allows an ERISA participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

---

jurisdictional grounds"); *Wood*, 764 F.3d at 326 ("[W]e do not take [those cases] as carte blanche for defendants to assert new grounds for removal at any time …, but rather an invitation for the court to look at those grounds already before it.").

under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). State and federal courts have concurrent jurisdiction over section 502(a)(1)(B) claims. 29 U.S.C. § 1132(e)(1).

Clark does not dispute that section 502(a)(1)(B) would preempt the state contract claims if ERISA governed the disability policies. The contract claims seek recovery of unpaid benefits and therefore could have been brought under section 502(a)(1)(B) "to recover benefits." *See* 29 U.S.C. § 1132(a)(1)(B) (quoted). In addition, those claims—alleging only that Unum breached the policies by failing to timely pay her benefits—implicate no other independent legal duty because they require only an interpretation of the terms, and Unum's liability would exist "only due to its administration" of the policies. *See Davila*, 124 S. Ct. at 213–14 (quoted).

Whether there is an employee welfare benefit plan governed by ERISA is a question for the court. *Stern v. Provident Life & Accident Ins. Co.*, 295 F. Supp. 2d 1321, 1324 (M.D. Fla. 2003). ERISA will govern a disability policy if: (1) it is part of a plan, fund or program, (2) established or maintained (3) by an employer, (4) to provide disability benefits (5) to participants or their beneficiaries. 29 U.S.C. § 1002(1); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc). Clark contests only the first three requirements. *See generally* Doc. 8, 19.

There is a plan, fund, or program if, from "surrounding circumstances," a "reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373. The plan, fund, or program does not have to be written or otherwise formalized. *Id.* at 1372. The employer does not have to play a role in the administration of the plan,

14

fund, or program.[10] *Id.* at 1374. The employer does not have to have complied with ERISA's fiduciary and reporting provisions.[11] *Id.* at 1372. That the employer did not intend for ERISA to govern is not determinative; what matters is whether the employer "intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship." *Anderson v. Unum Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir. 2004). A class of beneficiaries is unnecessary; "a plan covering only a single employee, where all other requirements are met, is governed by ERISA." *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991). And that the provision of benefits involves a policy designed for an individual—not a group—is not determinative. *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" without reference to group insurance); *Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 447 (4th Cir. 1993) (holding employer may establish ERISA plan by helping employees obtain and finance insurance from carriers of their choice); *Mass. Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997) (holding ERISA

---

[10]Because an employer does not have to play a role in the administration of the plan, fund, or program, "a commercially purchased insurance policy under which the procedures for receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes." *Randol v. Mid-West Nat. Life Ins. Co. of Tenn.*, 987 F.2d 1547, 1550 n.5 (11th Cir. 1993).

[11]If ERISA covers a plan, fund, or program, ERISA's fiduciary and reporting provisions require it to be established by a written instrument, but those "are only the responsibilities of administrators and fiduciaries of plans covered by ERISA and are not prerequisites to coverage." *Donovan*, 688 F.2d at 1372. "[I]t would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans …to circumvent [ERISA] merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards." *Id.*

applied where individual policies involved); *Paul Revere Life Ins. Co. v. Bromberg*, *382 F.3d 33, 35 (1st Cir. 2004)* (same).

The disjunctive language in the definition of "employee welfare benefit plan"—established *or* maintained, *29 U.S.C. § 1002(1)*—means that a showing of either suffices. *See Randol v. Mid-West Nat. Life Ins. Co. of Tenn.*, *987 F.2d 1547, 1551 n.6 (11th Cir. 1993)* (declining to decide if employer established plan because employer maintained plan). An employer establishes a plan, fund, or program by undertaking "some degree of implementation." *Butero v. Royal Maccabees Life Ins. Co.*, *174 F.3d 1207, 1214 (11th Cir. 1999)*. An employer maintains a plan, fund, or program by continuing it. *Anderson*, *369 F.3d at 1265*. Factors that may relate to either establishment or maintenance include employees' reasonable understanding and the employer's intent, representations, establishment of a fund to pay for the benefits, and deliberate failure to correct known perceptions about the plan's existence. *Id.*

The Department of Labor has issued a regulation—referred to as the "safe-harbor provision" to clarify for employers that certain common "group or group-type insurance program[s]" are not employee welfare benefit plans governed by ERISA. *See 29 C.F.R. § 2510.3–1(j)*. To qualify, four criteria must be satisfied:

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or

16

> members, to collect premiums through payroll deductions or dues
> checkoffs and to remit them to the insurer; and
>
> (4)   The employer or employee organization receives no consideration
> in the form of cash or otherwise in connection with the program,
> other than reasonable compensation, excluding any profit, for
> administrative services actually rendered in connection with
> payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j). The provision is "strict," obliging "the employer who seeks the safe harbor to refrain from *any* functions other than permitting the insurer to publicize the program and collecting premiums." *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1268 (11th Cir. 2006) (internal quotation marks omitted).

To avoid remand, Unum must demonstrate that ERISA governs at least one of Clark's disability policies. *See Williams*, 269 F.3d at 1319 (holding defendant must establish removal basis). Because the facts are better developed for the first policy, I address only that one.

For its argument that there is an employee welfare benefit plan governed by ERISA, Unum relies on Clark's deposition testimony that the Booth firm decided to provide her with the first policy among other benefits in a package, arranged to obtain one for her through a broker, presented it to her, provided it for her, and processed and paid the premiums to Unum from its own funds, and the Pajcic firm allowed her to "bring" the policy with her and, like the Booth firm, processed and paid the premiums to Unum from its own funds (until she began reimbursing the Pajcic firm years later). Doc. 1-1 at 11−26. For her argument that ERISA is inapplicable, she relies on documents in the claim files, the affidavit from the agent who sold the policies, the affidavit of the accountant and bookkeeper for the Pajcic firm, and the

17

letter from the trustee of the Pajcic & Pajcic Group Benefit Plan that together explain the policies were sold as individual policies, she maintained ownership and control over them, and the Pajcic firm did not treat them as part of the Pajcic & Pajcic Group Benefit Plan. Docs. 8-8, 8-9, 8-10, 15.

Unum likens all of those facts to the facts in *Randol*. Doc. 11 at 5–7. Bruce Randol was a mechanic for a tire center owned by Edward Hurt. *Randol*, 987 F.2d at 1548. Hurt employed only three people and did not provide benefits. *Id.* Hurt and his wife decided to buy medical insurance for themselves in anticipation of a baby. *Id.* An agent talked to him about group coverage for the employees. *Id.* He was not interested but agreed to let the agent talk to them. *Id.* The agent met with them at the tire center during business hours, and Randol and another employee bought medical insurance from the agent. *Id.* The agent told Hurt that the premiums must come from the tire center's account. *Id.* at 1549. Hurt agreed to that arrangement and also contributed. *Id.* He paid all of the first premium and a portion of the later ones, deducting the remainder from the employees' pay. *Id.* He did not intend to set up an insurance plan or employee-benefit program and did not comply with ERISA requirements. *Id.* Although the policy was considered by the insurer a "group policy," the only criterion was medical eligibility. *Id.* The insurer never sought information about the tire center, and Randol noted its name on his application only to convey his place of employment. *Id.* If the tire center failed to pay a premium, the insurer would have contacted Randol, not the tire center. *Id.* When the policy was canceled, the insurer sent the refund check to Randol, not the tire center. *Id.*

18

Randol later sued the insurer in state court, alleging contract and tort claims based on its refusal to cover certain medical costs. *Id.* at 1548. The insurer removed the case to federal court based on both diversity and complete ERISA preemption. *Id.* After discovery, the court ruled that there was an employee welfare benefit plan governed by ERISA, dismissed the state claims as preempted, and struck the jury demand.[12] *Id.* The Eleventh Circuit affirmed. *Id.* at 1548, 1552.

The Eleventh Circuit rejected at the outset that the safe-harbor provision applied, explaining, "the [program] plainly does not fall within this exception as it does not satisfy the … requirement that the employer not subsidize the purchase price of the insurance." *Id.* at 1549−50. The Eleventh Circuit held that there was a plan, fund, or program (the first requirement) because the intended benefits are the medical care provided under the policy, the class of beneficiaries is the two employees who bought the insurance, the source of financing is the employees' and tire center's combined payments, and the procedures for receiving benefits are the procedures in the policy. *Id.* at 1550. The Eleventh Circuit held that the tire center maintained the plan, fund, or program (the second requirement) because it had written the first check to buy the policies, had established a system under which it would pay the premiums by deducting a portion from pay and contributing the rest, and had done so to help the employees obtain health insurance. *Id.* at 1551.

---

[12]An ERISA claim is not triable to a jury. *Randol*, 987 F.2d at 1548. Unum asserts complete ERISA preemption for that reason and because an ERISA claim can usually be decided based only on facts in claim files without additional discovery attendant to a state claim. Doc. 30 at 13.

The Eleventh Circuit rejected Randol's reliance on *Taggart Corp. v. Life & Health Benefits Admin.*, 617 F.2d 1208 (5th Cir. 1980), "for the proposition that the 'bare' purchase of a health insurance policy cannot constitute establishment or maintenance of an ERISA employee welfare benefit plan." *Id.* at 1551. The Eleventh Circuit explained that *Taggart* is limited to its facts: "The employer in *Taggart* had simply informed its employees of the availability of group health insurance and had established a system whereby the monthly premium would be deducted from the paycheck of the one employee who chose to participate. Participation was voluntary and the employer did not subsidize purchase of the policy." *Id.* (citing *Donovan*, 688 F.2d at 1375).[13] Randol's situation was "significantly" different, the Eleventh Circuit explained, because the tire center not only had established a system for withholding premiums from wages and paying them directly to the insurer but also had contributed to the premiums so he and the other employee could obtain health insurance. *Id.* at 1552.

Here, the first requirement (plan, fund, or program) is satisfied. From the circumstances, a reasonable person could ascertain the intended benefits (money paid upon disability), the class of beneficiaries (Clark), the source of financing (premiums paid by the Booth firm, then the Pajcic firm, and then ultimately her through

---

[13]In the en banc case that had limited *Taggart* to its facts, the Eleventh Circuit explained that it agreed with *Taggart* if it "is interpreted to mean ERISA does not regulate purchases of health insurance when there is no welfare plan" but rejected *Taggart* to the extent it "implies that an employer … that only purchases a group health insurance policy or subscribes to a [multiple employer trust] to provide health insurance to its employees or members cannot be said to have established or maintained an employee welfare benefit plan." *Donovan*, 688 F.2d at 1375.

reimbursement), and the procedures for receiving benefits (Unum's procedure for processing claims). That neither the Booth firm nor the Pajcic firm formalized it, labeled it "ERISA," intended for ERISA to govern it, or complied with ERISA's provisions do not change that conclusion. *See Donovan*, 688 F.2d at 1372; *Anderson*, 369 F.3d at 1264. That the policy was only to Clark does not change that conclusion. *See Williams*, 927 F.2d at 1540. And that the provision of disability benefits involved an individual policy does not change that conclusion. *See Madonia,* 11 F.3d at 447; *Mass. Cas. Ins. Co.*, 113 F.3d at 1453; *Paul Revere Life Ins. Co.*, 382 F.3d at 35.

The second and third requirements (establishment or maintenance by an employer) are also satisfied. Sufficient for establishment, the Booth firm decided to provide Clark with disability insurance, arranged to obtain the policy through a broker, presented it to her as "this is what we're getting you," and provided it to her as part of her benefits package, Doc. 1-1 at 11−16. *See Butero*, 174 F.3d at 1207. Sufficient for maintenance, the Booth firm and later the Pajcic firm continued the plan by processing and paying from their funds the premiums as part of her benefits or compensation package so she could continue to have disability insurance. Doc. 1-1 at 15−16; Doc. 8-9 ¶ 7.

Unum's reliance on *Randol* is understandable; the material facts here are not sufficiently distinguishable from the material facts there. Here, as there, the employer paid out of its funds all or part of the premiums. *Compare* Doc. 1-1 at 15−16 *and* Doc. 8-9 ¶ 7 *with Randol*, 987 F.2d at 1549. Here, as there, the employer processed the premiums. *Compare* Doc. 1-1 at 15−16 *and* Doc. 8-9 ¶¶ 7, 8 *with Randol*,

987 F.2d at 1549. Here, as there, the employer never intended to establish or maintain an ERISA plan. *Compare* Doc. 8-9 *with Randol*, 987 F.2d at 1549. Here, as there, the employer therefore did not comply with ERISA's requirements. *Compare* Doc. 8-9, *with Randol*, 987 F.2d at 1549. Here, as there, the policy was an individual policy or shared the characteristics of one. *Compare* Doc. 8-8 at ¶4 *with Randol*, 987 F.2d at 1549. Here, as there, that the employer subsidized the plan makes *Taggart*'s limited holding inapplicable. *Compare* Doc. 8-8 at ¶4 *with Randol*, 987 F.2d at 1551. That here involved one class member and there involved two, *compare* Doc. 8–8 at ¶4 *with Randol*, 987 F.2d at 1548–49, does not matter, *see Williams*, 927 F.2d at 1545. So here, as there, there is an employee welfare benefit plan governed by ERISA.

Clark's reliance on the safe-harbor provision, as Randol's had been, *Randol*, 987 F.2d at 1549–50, is unavailing. The Department of Labor created the safe-harbor provision to address a very different situation than the one here. By its terms, it addresses only "group or group-type insurance programs" under which the employer allows the insurer to publicize its product to employees and helps them collect premiums through payroll deductions without doing more. 29 C.F.R. § 2510.3-1(j); *see Moorman*, 464 F.3d at 1268. The safe-harbor provision does not apply: Unum was not offering a group product; Clark was not presented with a voluntary program; neither the Booth firm nor the Pajcic firm invited Unum to present a group product; and the firms did not just collect and premiums. Doc. 1-1 at 12–26; Doc. 8-8 at ¶4.

In response to questioning at the hearing and as a supplemental argument, Clark suggests that even if there had once been an employee welfare benefit plan

governed by ERISA, there came a point (she does not say when) that ERISA's governance ceased. Doc. 24 at 45; Doc. 30 at 34−35. Most cases addressing the cessation of ERISA governance, including the cases she cites, Doc. 24 at 4−5; Doc. 29 at 4−5, involve the termination of employment, the conversion of a group policy into an individual policy, and a fact-specific inquiry into any remaining connection between the former employee, the former employer, the policy, and the plan. *See, e.g., Glass v. United Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994) (holding ERISA continued to govern policy that employee had converted to individual policy after termination from employment because ability to obtain converted policy arose from ERISA program and "continued to be integrally linked" to it); *Waks v. Empire BCBS*, 263 F.3d 872, 875–76 (9th Cir. 2001) (holding ERISA ceased to govern policy that employee converted from group to individual policy after employer ceased operating because converted policy was "new, separate, individual policy," it covered her only as individual and not as employee, it was directly between her and the insurer, it was independent of ERISA plan, it did not place administrative burdens on ERISA plan, and there was no administration by long-defunct employer); *Demars v. CIGNA Corp.*, 173 F.3d 443, 446 (1st Cir. 1999) (holding ERISA ceased to govern policy that employee had converted from group to individual policy because insurer had issued individual policy and employer had no administrative or financial responsibility for it; citing numerous other cases for and against general holding that ERISA does not govern conversion policies).

Here, the changes were Clark's move from the Booth firm to the Pajcic firm and, years later, assumption of payment of the premiums through reimbursement. Doc. 8-9 ¶7. Because the policy has never been "converted" or otherwise changed character, more analogous than cases involving conversion policies are cases involving changes in employment and payment responsibility. The Eleventh Circuit has not decided but other courts have held that ERISA continues to govern a policy when the only change is cessation of employment or a change in payment responsibility because those types of changes do not alter the policy itself or its connection to the plan. *See, e.g., Mass. Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997); *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 842–43 (9th Cir. 1994); *Griggers v. Equitable Life Assurance*, 343 F. Supp. 2d 1190, 1194 (N.D. Ga. 2004); *Sullivan v. Paul Revere Life Ins. Co.*, No. 5:09-cv-1015-JEO, 2010 WL 8510501, at *6–8 (N.D. Ala. May 28, 2010) (unpublished); *Jaffe v. Provident Life and Accident Ins. Co.*, No. 996302CIVDAVIS/BROWN, 2000 WL 349750, at *4 n. 8 (S.D. Fla. March 21, 2000) (unpublished); *Albright v. Union Bankers Ins. Co.*, 85 F. Supp. 2d 1302, 1305 (S.D. Fla. 1999).

*Stern* is an analogous case from this Court. In *Stern*, a doctor employed by an association bought two disability policies. 295 F. Supp. 2d at 1323. The association initially paid the premiums from its funds but stopped. *Id.* The association continued to send the premiums to the insurer so he could enjoy a discount, but he paid for them with after-tax earnings. *Id.* He later sued the insurer in state court for breach of contract based on non-payment. *Id.* The insurer removed the case to federal court

based on complete ERISA preemption, and he moved to remand, contending that ERISA did not govern the policies because they had been individually issued. *Id.* This Court began with the observation that the safe-harbor provision might apply if it viewed the policies as they stood after the doctor began paying the premiums. *Id.* at 1325. But, this Court continued, it could not "examine the policies only in their current form; it also must examine them from the point of their creation." *Id.* At that point, the safe-harbor provision did not apply because the association was paying the premiums. *Id.* This Court then asked "whether the change in payor status converted the policies from ERISA-covered to non-ERISA plans." *Id.* at 1326. This Court determined that the employer had "established" a plan because the association had exercised some degree of implementation by providing the funding source for years. *Id.* Relying on the disjunctive "established *or* maintained" in the statutory definition of "employee welfare benefit plan," 29 U.S.C. § 1002(1), this Court held: "Because the plans were established as ERISA policies, they remain subject to ERISA. This is so even though the plans were not 'maintained' as ERISA policies" after the doctor began paying the premiums. *Id.*

Whatever the merit to an argument that ERISA would have ceased to govern the policy if the Pajcic firm had not allowed Clark to bring it with her and had not assumed responsibility for the payment and processing of premiums, those are not the facts here. By allowing her to bring it with her and assuming responsibility for the payment and processing of premiums, the Pajcic firm continued the ERISA plan that the Booth firm had established. In accord with the various cases above, her

ultimate reimbursement of the premiums to the Pajcic firm was insufficient to sever its ERISA ties; the policy was unaltered and the Pajcic firm's connection to it continued. Doc. 30 at 44; Doc. 8-9 ¶7.

Thus, ERISA governs at least the first policy and completely preempts the state contract claim based on it. Accordingly, the basis for removal is present, and remand is unwarranted unless Unum filed the notice of removal too late.

2.   *The notice of removal is timely.*

Section 1446(b) has two primary subsections governing removal timing: (b)(1) and (b)(3). *Pretka*, 608 F.3d at 756−58. Together, they serve to "encourage expeditious removals from state to federal court" to foster "the recognized policy … to require, as far as possible, prompt action on the part of those seeking a removal so as to avoid the evils of the delay necessarily attendant upon the change of forum." *Id.* at 767 (internal quotation marks omitted). "[T]he traditional understanding was that removal was both permitted *and required* 'as soon as the action assumes the shape of a removable case.'" *Id.* at 760 (*quoting Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 101 (1898)) (emphasis in *Pretka*). "Otherwise, a defendant could wait and see how it fared in state court proceedings before deciding whether to remove." *Id.*

Subsection (b)(1) governs a case removable at the outset:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of the summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

Subsection (b)(3) governs if the case "stated by the initial pleading is not removable":

> Except as provided in subsection (c) [prohibiting removal based on diversity jurisdiction under (b)(3) more than one year after the case began unless the plaintiff acted in bad faith to prevent removal], if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). Through the 2011 amendment, *see* footnote 7, Congress added: "If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A).[14] Even before the amendment, the Eleventh Circuit suggested that "other paper" could include deposition testimony and other discovery responses. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007).

All courts of appeals that have addressed whether a court may consider a defendant's pre-litigation knowledge (or post-litigation knowledge from a source other than the plaintiff) to decide the triggering of the 30-day removal period have

---

[14]Through the 2011 amendment, *see* footnote 7, Congress also designated what had been two unnumbered paragraphs in subsection (b) as (b)(1) and (b)(3). Pub. L. No. 112-63, 125 Stat. 758 (Dec. 7, 2011). Pre-amendment cases refer to newly renumbered subsection (b)(1) as the "first paragraph" in subsection (b) and newly renumbered subsection (b)(3) as the "second paragraph" in subsection (b). *See, e.g., Pretka*, 608 F.3d at 756−68.

held no. *See Romulus v. CVS Pharm., Inc.*, 770 F.3d 67, 74−75 (1st Cir. 2014); *Cutrone v. Mortg. Elec. Reg. Sys., Inc.*, 749 F.3d 137, 143 (2d Cir. 2014); *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013); *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 399 (5th Cir. 2013); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013); *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 974 (8th Cir. 2011); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999); *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997); *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53−54 (3d Cir. 1993) (*overruled on other grounds by Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999)). Those courts have adopted a bright-line rule under which a court may look only at the pleading or any post-litigation "other paper," 28 U.S.C. § 1446(b)(3), from the plaintiff to decide the triggering of the 30-day removal period.

The bright-line rule is based on the language of subsection (b)(3) ("if the case *stated by the initial pleading* is not removable, a notice of removal may be filed within 30 days *after receipt by the defendant*, through service or otherwise, of a copy of an amended pleading, motion, order or other paper *from which it may first be ascertained* that the case is one which is or has become removable") (emphasis added). The rule is also based on a desire to promote judicial efficiency through avoidance of mini trials about what defendants had known or should have known based on facts it possessed when it received the pleading or other paper and premature removals by risk-averse defendants fearing accidental closure of the 30-day removal period. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992). "If plaintiffs think that their

28

action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013).

The bright-line rule is usually stated in strict terms (the triggering pleading or other paper must provide "specific and unambiguous notice that the case satisfies federal jurisdictional requirements," *Walker*, 727 F.3d at 825), though courts agree that "a plaintiff's pleading or later paper will trigger the deadlines in Section 1446(b) if [it] includes a clear statement of the damages sought or if the plaintiff's paper sets forth sufficient facts from which the amount in controversy can easily be ascertained by the defendant by simple calculation" while emphasizing that the defendant "has no duty … to investigate or to supply facts outside of those provided by the plaintiff." *Romulus*, 770 F.3d at 75. While a defendant still must apply a "reasonable amount of intelligence" to its reading of the pleading or later other paper from the plaintiff, it does not have to consider other material. *Cutrone*, 749 F.3d at 145.

The bright-line rule is distinct from the rule that a defendant may remove a case under subsection (b)(1) based on diversity jurisdiction if the amount in controversy is facially apparent from the complaint. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1060 (11th Cir. 2010) (holding defendant may remove case based on diversity jurisdiction if complaint does not expressly seek damages exceeding $75,000 but it is otherwise "'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional limit"). The former applies to timing disputes;

the latter, to amount-in-controversy disputes. *Mumfrey*, 719 F.3d at 400. "Whether the jurisdictional prerequisites are in fact met is a separate determination and often involves consideration of materials outside the state-court pleadings. … In contrast, the timeliness inquiry is limited to examining contents of the clock-triggering pleading or other litigation paper; the question is whether *that document*, on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." *Walker*, 727 F.3d at 825 (emphasis in original).

In accordance with the courts of appeals that have adopted the bright-line rule, this Court has consistently applied it. *See, e.g., Stephenson v. Amica Mut. Ins. Co.*, No. 6:14-cv-978-Orl-37KRS, 2014 WL 4162781, at *2 (M.D. Fla. Aug. 21, 2014) (unpublished); *Village Square Condo. of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 6:09-cv-1711-Orl-31DAB, 2009 WL 4855700, at *4 (M.D. Fla. Dec. 10, 2009) (unpublished); *Benstock v. Arrowood Indem. Co.*, No. 8:11-cv-2493-T-23TGW, 2011 WL 6314236, at *1−2 (M.D. Fla. Dec. 16, 2011) (unpublished); *Armstrong v. Sears, Roebuck & Co.*, No. 8:09-cv-2297-T-23TGW, 2009 WL 4015563, at *1 (M.D. Fla. Nov. 19, 2009) (unpublished); *Del Rio v. Scottsdale Ins. Co.*, No. 605CV1429-Orl-19JGG, 2005 WL 3093434, at *3 (M.D. Fla. Nov. 18, 2005) (unpublished).

Analogous to this case, another district court recently applied the bright-line rule beyond removal based on diversity jurisdiction to removal based on complete ERISA preemption. *S. Broward Hosp. Dist. v. Coventry Health & Life Ins. Co.*, No. 14-61157-CIV, 2014 WL 6387264, at *3−4 (S.D. Fla. Nov. 14, 2014) (unpublished). In

*South Broward*, the court held that a complaint raising state claims did not alone put the defendant on notice that complete ERISA preemption could serve as a basis for removal, and the defendant's possession of a pre-litigation spreadsheet that might have did not trigger the 30-day removal period. *Id.* at *2.

Unum wants the Court to apply *South Broward* and the bright-line rule, Doc. 29 at 1−4; Clark does not, Doc. 8 at 5−7. To decide the triggering of the 30-day removal period, she wants the Court to look beyond the complaint, her discovery responses, and her deposition testimony to the policies, Docs. 8-2, 8-3, and the claim files, Doc. 15, that Unum presumably possessed all along. Doc. 8 at 5−7. She also wants the Court to consider Unum's affirmative defense of ERISA preemption, Docs. 8-4, 8-5, as proof of its earlier knowledge that ERISA preemption might apply. Doc. 8 at 5−7.

Clark has not provided a compelling reason for not applying the bright-line rule. She contends: "Public policy dictates that it is appropriate and necessary for this Court to look at documents and information contained within the Defendant's own internal claim files to determine the timeliness of its removal of this case. … To do otherwise would be to allow Defendant to use its internal information as a sword, when it is suitable to advance its purpose, yet … to hide behind this information, when it is more favorable to do so." Doc. 24 at 2. As nine circuit courts of appeals and numerous decisions from this Court have recognized, however, the policy favoring the bright-line rule (promotion of judicial efficiency through avoidance of mini trials and premature removals) predominates, and Clark's own submission of thousands of pages from the claim files demonstrates why. If she had been concerned about Unum

31

taking a sword-and-shield approach, she had possessed the ability to prevent it. *See Roth,* 720 F.3d at 1126 (if plaintiff thinks case may be removable and defendant might delay removal until strategically advantageous moment, it need only give defendant paper with facts for removal). To decide the triggering of the 30-day removal period, application of the bright-line rule is warranted.[15]

Applying the bright-line rule, the Court may consider only the complaint served in September 2013, Doc. 2; Clark's discovery responses served in March 2014, Doc. 25-1, and April 2014, Doc. 26 at 3; and her deposition testimony in July 2014, Doc. 1-1 at 10−29.[16] If any of the first three papers or all of them together establish subject-matter jurisdiction—whether federal-question or diversity—the notice of removal filed in August 2014 was untimely. If only the fourth did, it was timely.

---

[15]To the extent Clark seeks an exception to the bright-line rule based on Unum's affirmative defense of ERISA preemption, no exception is warranted. Doc. 8 at 5−7. Complete preemption is the exception to the well-pleaded complaint rule for removal and is jurisdictional, while defensive preemption is an affirmative defense to a state-law claim that is not jurisdictional and does not provide a basis for removal. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). Defensive preemption of a contract claim in a benefits-due case is an affirmative defense that may be waived. *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003); *Wolf v. Reliance Std. Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995); *Dueringer v. Gen. Amer. Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir. 1988); *Fla. Health Sciences Ctr., Inc. v. Humana Med. Plan, Inc.*, 190 F. Supp. 2d 1297, 1303 (M.D. Fla. 2001). Unum's assertion of preemption as an affirmative defense to avoid waiver does not equate to an admission that it had sufficient facts to justify removal based on complete preemption that would serve to estop it from later claiming otherwise.

[16]Through the 2011 amendment clarifying that "information relating to the amount in controversy in the record of the State proceeding" qualifies as an "other paper" for purposes of diversity-jurisdiction-based removal, *see* footnote 7; 28 U.S.C. § 1446(c)(3)(A), the Court also could have considered state-court records, but Clark has not pointed to any that have information about the amount in controversy.

Before addressing any triggering effect of those documents, I observe that neither the language of subsections (b)(1) and (b)(3) nor the traditional understanding of removal support Unum's position that even if the first three papers had established diversity jurisdiction, the 30-day removal period renewed once it received any later paper establishing federal-question jurisdiction. Doc. 30 at 9. Subsections (b)(1) and (b)(3) do not distinguish the bases for removal for purposes of the 30-day removal period, and any inferred renewal period would conflict with "the traditional understanding … that removal was both permitted *and required* 'as soon as the action assumes the shape of a removable case.'" *Pretka*, 608 F.3d at 767. As courts addressing the issue have held, if a defendant fails to remove a case upon receipt from the plaintiff of a pleading or other paper that triggers the 30-day removal period, it does not get another chance to remove the case upon receipt of another pleading or other paper that establishes an additional basis for removal. *See Estate of Okonkowski v. Okonkowski*, No. 2:12-cv-264, 2012 WL 5989691, at * 3 (W.D. Mich. Nov. 30, 2012) (unpublished); *WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC*, No. 2:12-cv-1454, 2012 WL 5198478, at *3 (D. Nev. Oct. 18, 2012) (unpublished). Unum has not provided, and I have not found, any contrary authority.

The parties do not dispute that the complaint does not include allegations sufficient to establish complete ERISA preemption (indeed, its "personal" descriptor of the policies, Doc. 2 ¶¶ 4, 5, suggests otherwise). And the parties do not dispute that although the complaint includes allegations sufficient to establish diversity of citizenship, *see* Doc. 2 ¶¶ 2–3, 6, it does not include allegations sufficient to establish

33

that the amount in controversy exceeds $75,000 *unless* the Court considers the policies it identifies but does not attach.[17]

Florida's pleading standard requires that all contracts "upon which action may be brought … be incorporated in or attached to the pleading." Fla. R. Civ. P. 1.130. That standard serves to apprise defendants of particulars so they can plead with greater certainty. *Amiker v. Mid-Century Ins. Co.*, 398 So. 2d 974, 975 (Fla. 1st DCA 1981). For incorporation by reference under Florida law, the incorporating document must express an intent to be bound by the collateral document. *Kantner v. Boutin*, 624 So. 2d 779, 781 (Fla. 4th DCA 1993).

The complaint's identification of the policies, allegations that Unum possesses them, and reliance on them for the claims, Doc. 2 ¶¶ 4, 5, probably served to incorporate them by reference as required by Florida's pleading standard. *See* Fla. R. Civ. P. 1.130; *Kantner,* 624 So. 2d at 781. But the issue is not whether the complaint could survive a motion to dismiss; rather, the issue is whether the complaint triggered the 30-day removal period. And for that issue, the language of subsection (b)(3) ("if the case *stated by the initial pleading* is not removable) and the policy underlying the

---

[17]Unum does not argue that the complaint and the policies fail to establish the threshold $75,000. *See generally* Docs. 26, 29. Although the policies appear to provide maximum monthly benefits of $1520 (first policy) and $4301 (second policy) to the later of age 65 or 24 months after payments begin, and Clark alleges that Unum made a preliminary total-disability finding, that Unum stopped paying benefits under the policies in October 2010, and that she continues to suffer damages in the form of unpaid benefits, Doc. 2 ¶¶ 1, 25, 29, 33, to get to the $75,000 threshold, an assumption must be made that Unum was required to pay her the maximum monthly benefits for a substantial time between their cessation and the filing of the complaint. Without an argument from Unum, the Court does not need to decide whether making that assumption accords with the bright-line rule.

bright-line rule (promotion of judicial efficiency through avoidance of mini trials about what defendants actually possessed) dictate consideration of the complaint but not the policies it did not attach. Were it otherwise, a court could confront an undesirable mini-trial over whether a defendant actually possessed the incorporated but not attached document as alleged. Clark's later discovery responses fare no better; their mere broad reference to the 2482-page claim files in response to general requests for production, Doc. 25-1; Doc. 26 at 3, falls well short of "specific and unambiguous notice that the case satisfies federal jurisdictional requirements," *see Walker*, 727 F.3d at 825 (quoted).

Because neither the complaint on its face nor the later discovery responses sufficiently established either complete ERISA preemption or the $75,000 threshold, they did not trigger the 30-day removal period. It was only Clark's deposition testimony that first established a basis for removal—complete ERISA preemption— through its revelation of facts concerning the genesis of the first policy, the Pajcic firm's acceptance of it, and both firms' contributions to it. With that July 30, 2014, deposition, Doc. 1-1 at 10–26, therefore triggering the 30-day removal period, Unum's August 28, 2014, notice of removal, Doc. 1, was timely. Without either a jurisdictional or procedural defect, remand is unwarranted.

## B.   *Motion to Dismiss the Tort Claim*

Unum filed its motion to dismiss Clark's tort claim when the case was still in state court, Doc. 3, and filed its notice of removal before any state-court ruling on it, Doc. 1-1 at 2. Because she has expressed a desire to amend the complaint if the case

stays based on ERISA preemption, Doc. 30 at 55, and permission to amend on that basis is warranted, I recommend giving her leave to do so and denying as moot the motion to dismiss the tort claim without prejudice to Unum filing another motion to dismiss if the tort claim is in the amended complaint.

## III.  Recommendation

Thus, I recommend issuance of the following decretal:

1.  The Court **denies** Clark's motion to remand and request for attorney's fees and costs. Doc. 8.

2.  The Court **permits** Clark to file an amended complaint within 30 days from entry of the Court's order.

3.  The Court **denies** Unum's motion to dismiss the tort claim, Doc. 3, without prejudice to filing another motion to dismiss if the tort claim is in the amended complaint.

4.  The Court **directs** the parties to file an amended case management report within 30 days from the entry of the Court's order.[18]

**Entered** in Jacksonville, Florida, on February 9, 2015.[19]

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:  Counsel of record

---

[18]A scheduling order has not yet been entered pending a decision on the motion to remand.

[19]Either party may file and serve specific written objections to this report and recommendation within 14 days of service. *See* Fed. R. Civ. P. 72(b)(2); L.R. 6.02(a). Failure to do so may alter the scope of direct and appellate review. *See* Fed. R. Civ. P. 72(b)(3); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).